[Civ. No. 26327. Second Dist., Div. Two. Feb. 14, 1963.]

MARJORIE VORIS, Plaintiff and Appellant, v. PACIFIC INDEMNITY COMPANY, Defendant and Respondent.

Sandford R. Willford for Plaintiff and Appellant.

Waters & McCluskey and William W. Waters for Defendant and Respondent.

ASHBURN, J.—Plaintiff sued defendant Insurance Company for injuries inflicted upon her by an uninsured motorcyclist. She relied upon an endorsement which was attached to her automobile policy under date of June 30, 1959, to become effective on July 14, 1959. It contained an uninsured motorist liability provision as follows: "I. *Damages for Bodily Injury Caused by Uninsured Automobiles.* To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."

The court granted a summary judgment in favor of defendant and plaintiff now appeals.

The action is predicated upon the proposition that the word "automobile" as used in the quoted paragraph of the endorsement includes "motorcycle." Defendant insisted at all times in the trial court that the converse is true and that that question presents the only issue in the case.

California's first statute requiring coverage of liability for injuries inflicted by an uninsured motorist was the enactment of section 11580.2, Insurance Code, which statute was approved by the Governor and filed with the Secretary

of State on June 5, 1959, effective on September 18, 1959.[1] The endorsement in question was attached to an existing policy just 25 days after enactment of the 1959 statute, but some three months before its effective date. It seems a fair inference that this additional coverage was sold and this endorsement prepared and printed in anticipation of the operation of the new law. That is not to say that the new statute would affect or enlarge the existing contract, for the contrary has been decided in *Ball* v. *California State Auto. Assn. Inter-Ins. Bureau,* 201 Cal.App.2d 85 [20 Cal.Rptr. 31].

█ The statute enters as an implied term into each policy or rider subsequently issued (*Wildman* v. *Government Employees Ins. Co.,* 48 Cal.2d 31, 39 [307 P.2d 359]; *American Auto. Ins. Co.* v. *Republic Indemnity Co.,* 52 Cal.2d 507, 510 [341 P.2d 675]; *Royal Exchange Assur.* v. *Universal Underwriters Ins. Co.,* 188 Cal.App.2d 662, 666 [10 Cal.Rptr. 686]), but any departure from the statutory language which the draftsman had before him when drawing the instant endorsement does not vitiate it. The new statute enters into the question of proper interpretation of that endorsement.

█ It uses the word "automobile" in place of the statutory phrase "motor vehicle," and from this the question arises whether a motorcycle is an automobile within the terms of the endorsement. A few cases that have been concerned with the question of whether a motorcycle is an automobile within the meaning of an insurance policy which mentions only an automobile have adopted the negative view. (See Annos. in 48 A.L.R. 1090; 70 A.L.R. 1253; 74

---

[1]The 1959 statute added sections 11580.2 to the Insurance Code. (Stats. 1959, ch. 817, p. 2835.)

In 1961 the Legislature repealed that section and reenacted it on the same day in the same chapter of the laws. (Stats. 1961, ch. 1189, §§ 1, 2, p. 2921.)

For our purposes the language of the two statutes is the same and we quote from the present form of it:

"No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be issued or delivered in this State to the owner or operator of a motor vehicle, or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle then principally used or principally garaged in this State, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code insuring the insured or his legal representative for all sums within such limits which he shall be legally entitled to recover as damages for bodily injury from the owner or operator of an uninsured motor vehicle. . . ."

A.L.R.2d 1264, 1265-1266.) But *Hartford Acc. & Indemnity Co.* v. *Come*, 100 N.H. 177 [123 A.2d 267], reaches a conclusion which seems more consonant with the terms of our motor vehicle code, which does not define the word "automobile" but uses "motor vehicle" in its place and throughout the treatment of the subject of operation of automobiles. "Vehicle" is defined as "a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved by human power or used exclusively upon stationary rails or tracks." (Veh. Code, § 670.) "Motorcycle": "A 'motorcycle' is any motor vehicle other than a tractor having a seat or saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground and weighing less than one thousand five hundred pounds." (Veh. Code, § 400.) And "Motor Vehicle": "A 'motor vehicle' is a vehicle which is self-propelled." (Veh. Code, § 415.) (See also in this connection, *Lambert* v. *Southern Counties Gas Co.*, 52 Cal.2d 347, 351 [340 P.2d 608].) Undoubtedly a motorcycle is a motor vehicle within the field covered by the Vehicle Code and, as that code deals primarily with automobiles under the name motor vehicle, it would seem logical to infer that a motorcycle is also an automobile within the purview of the code. It also seems that the rule of strict construction which applies to insurance policies (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914]) would require that we make the same holding with respect to this insurance policy.

The New Hampshire court in *Hartford Accident & Indemnity Co.* v. *Come*, *supra*, 123 A.2d 267, had before it an action for declaratory judgment arising from an injury inflicted by a motorcycle. It was required to construe a non-owner liability policy and an exclusion of "any automobile owned by the named insured." At page 270 the court said: "Hence the coverage afforded the insured by the policy and statutory endorsement insured him in the operation of any 'motor vehicle' not owned by him. The statutory definition of 'motor vehicle' encompasses motorcycles, RSA 268:1, subd. IX, and accordingly the coverage extended to motorcycles not owned by the insured. To afford this limited coverage, the word 'automobile' as used in the policy must be construed as equivalent to the statutory words 'motor vehicle'. Consistency requires that the language of the 'non-owner policy' endorsement, excluding from coverage 'any automo-

bile owned by the Named Insured,' be similarly construed. In consequence the motorcycle owned by the insured was excluded from coverage.''

*Life & Casualty Ins. Co. of Tennessee* v. *Metcalf*, 240 Ky. 628 [42 S.W.2d 909] is also in point. The question there presented was whether a truck with a closed body, one which was used for delivery of dairy products to customers, was a ''private motor driven automobile,'' within the meaning of an insurance policy. Answering in the affirmative the court said, in part: ''It is presumed that the word 'Automobile' was used, and that it was intended by both the insurer and the insured to be construed, according to the commonly and generally accepted sense and meaning thereof, in the absence of an allegation and proof to the contrary. It was a general rule at common law 'that all words and phrases should be construed and understood according to the common and approved usage of language but technical words, phrases and such others as may have acquired popular and appropriate meaning should be construed and understood according to such meaning.' '' (P. 910 [42 S.W.2d].)

''It is apparent that the purpose of the policy was to insure the insured against the result of a collision while riding in a 'private motor driven automobile.' This is not disputed by the appellant.

''The absence from the policy of express, unequivocal language expressly excluding 'a truck' by appropriate words saving itself from liability to the insured where a collision occurs while riding in a 'private motor driven,' or self-propelled vehicle, other than an 'automobile' used for pleasure or transporting passengers, tends to convince the mind that by its use of the word 'automobile' it did not thereby exclude 'a private motor driven' truck. It is apparent that the word 'automobile' was selected and used in the policy in its common, general, and popular sense. It is defined by text-writers and the courts to mean a self-propelled vehicle or carriage for the transportation of persons or property whose operation is not confined to a fixed track.'' (Pp. 910-911 [42 S.W.2d].)

'' ' ''Automobile'' means a vehicle designed mainly for transportation of persons on highways, equipped with an internal combustion, hydrocarbon vapor engine, which furnishes the motive power and forms a structural portion of the vehicle. Secondarily, it is used as synonymous with

"motor vehicle," denoting a vehicle moved by inanimate power of any description, generated or stored within it, and intended for the transportation of either goods or persons.' *American-La France Fire Engine Co.* v. *Riordan* (C.C.A. N.Y.) 6 F.2d 964, 968. . . .

"It is our conclusion that the word 'automobile' is the general name adopted by popular approval of all forms of self-propelling vehicles for use on the highways and streets, and our application of it herein is in harmony with the definitions, *supra*." (P. 911 [42 S.W.2d].)

*Williams* v. *Standard Acc. Ins. Co.*, 158 Cal.App.2d 506, 510 [322 P.2d 1026] : "In Webster's International Dictionary, second edition, an automobile is defined as a self-propelled vehicle suitable for use on a street or roadway, and in Words and Phrases, permanent edition, 4, it is said that 'Automobile is general name adopted by popular approval of all forms of self-propelling vehicles for use on highways and streets, and is presumed to have been used in indemnity provision of accident policy in its common, general, and popular sense, in absence of proof to the contrary. *Life & Cas. Ins. Co. of Tennessee* v. *Metcalf*, 240 Ky. 628 [42 S.W.2d 909, 910].' "

Since section 11580.2, Insurance Code, uses "motor vehicle" rather than "automobile" the coverage under such an endorsement issued and delivered after September 18, 1959, would extend to an injury inflicted by a motorcycle, for the statutory words "motor vehicle," including as they do "motorcycle," would be read into the insurance policy by virtue of the decisions above cited. As the form of endorsement was being prepared by defendant insurer to cover a new type of insurance and doubtless for use after the effective date of the statute, we conclude that the insurer must be deemed to have intended that the word "automobile" apply to all motor vehicles which are enumerated in the code.

It seems to be argued that this coverage could not apply to plaintiff's injury as she was struck while a pedestrian in a crosswalk. The trial judge so states and appellant's counsel concedes the fact though the record does not elsewhere show it. The judge in his memorandum of opinion said: "Next, plaintiff points out that the Act defines the insured and the coverage as 'the named insured . . . while occupants of a motor vehicle or otherwise. . . .' In effect, plaintiff argues that the term 'otherwise' means that the in-

sured is covered while an occupant of her car and also while not an occupant thereof. Such an interpretation would make the policy a general accident policy limited only in that causation must be by the negligent driver of an insured automobile.'' He rejected the argument on the ground of absurdity and doubtful constitutionality of a statute so construed. That that language means what it says is manifested by the difference of phraseology found in other parts of the endorsement. For instance, a hit and run automobile is defined in II(d) as one ''which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident.'' Also, under the heading of ''Other Insurance'' in paragraph 5 of III the phrase is used: ''With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile.''

This is a declaratory relief action, but the court granted a summary judgment. Paragraph I, quoted *supra,* provides for arbitration of two questions in the event of inability of the insured and the insurer to agree thereon, namely, whether the insured is legally entitled to recover damages from the uninsured motorist and if so, the amount thereof. The complaint alleges that plaintiff and defendant ''both agree that plaintiff is legally entitled to recover damages from the owner or operator of the said motorcycle as a result of bodily injury to the plaintiff and further do agree as to the amount of payment which would be owing under said endorsement.'' The declaration of plaintiff's attorney, Mr. Willford, shows that the parties agreed upon the facts concerning the arbitrable items and therefore no arbitration was necessary. Defendant's affidavit does not show any defense to the claim and the summary judgment should not have been granted in favor of defendant.

Judgment reversed.

Fox, P. J., and Herndon, J., concurred.