981 P.2d 236

**SUN VALLEY POTATOES, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**ROSHOLT, ROBERTSON & TUCKER, Chartered, an Idaho professional corporation, Defendant–Respondent.**

No. 24627.

Supreme Court of Idaho,
Boise, February 1999 Term.

May 28, 1999.

Rehearing Denied Aug. 3, 1999.

Ellis, Brown and Sheils, Chtd., Boise, for appellant. Allen B. Ellis argued.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise; Ling, Nielsen & Robinson, Rupert, for respondent. Warren E. Jones argued.

TROUT, Chief Justice.

This legal malpractice case against Respondent, Rosholt, Robertson & Tucker (RR & T), arose from RR & T's representation of Sun Valley Potatoes, Inc. (Sun Valley) in a contract dispute. In the underlying contract action, a jury returned a verdict against Sun Valley and in favor of the plaintiff, Mainline Ranches (Mainline), for in excess of $500,000 based upon Sun Valley's allegedly wrongful rejection of a large quantity of potatoes. Subsequently, SunValley sued RR & T alleging three causes of action, including legal

malpractice. RR & T responded with a counterclaim seeking to recover the remainder of their attorney fees incurred in the Mainline/Sun Valley litigation. Sun Valley appeals from the trial court's decision granting RR & T's motion for partial summary judgment on the malpractice claim.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Sun Valley is an Idaho corporation engaged in potato processing. While the record does not reveal the exact nature of the claims filed in the Mainline/Sun Valley litigation, one issue involved whether Sun Valley wrongfully rejected potatoes stored in a cellar, commonly known as the "Blincoe" cellar. Sun Valley's allegations of legal malpractice relate to three evidentiary matters which bore on the amount of damages sustained by Mainline.

August Blase (Blase), Sun Valley's president, asserts that before the trial commenced he informed RR & T that some of the potatoes, before being placed in the Blincoe cellar, may have been subjected to freezing temperatures. There was no evidence that these particular potatoes did indeed sustain damage from freezing; however, other potatoes grown in the general vicinity had sustained such damage. As a consequence, Blase believed that Mainline's damage calculations were inflated. RR & T did not use the information at trial. During the trial, Blase for the first time informed RR & T that the Blincoe cellar could not physically hold 160,000 cwt. of potatoes as Mainline contended, which would again call into question Mainline's damage calculations. RR & T did not challenge the cellar size at trial. Finally, as part of its presentation of damages, Mainline submitted evidence that because of Sun Valley's breach, it suffered losses on 160,000 cwt. of potatoes stored in the Blincoe cellar. One piece of evidence, in the form of a report, concluded: "AMOUNT OF MITIGATED DAMAGES INCURRED BY MAINLINE RANCHES ... $546,506.79," to which RR & T did not object. The jury returned a verdict in favor of Mainline and awarded damages consistent with Mainline's calculations.

On October 26, 1995, Sun Valley sued RR & T alleging excessive billing, violations of Idaho's Consumer Protection Act, and at issue here, legal malpractice. RR & T answered and filed a counterclaim seeking to recover uncollected attorney fees. On September 17, 1997, RR & T moved for partial summary judgment seeking a dismissal of the malpractice claim. RR & T argued that each incident of alleged negligence involved tactical decisions and was protected by the "Attorney Judgment Rule."

RR & T initially supported their motion by attaching only Blase's deposition. Thereafter, shortly before the summary judgment hearing, RR & T supplemented the record with an affidavit from Jerry Jensen, the attorney at RR & T who specifically represented Sun Valley in the underlying litigation. While the exact date is disputed, RR & T served Sun Valley with a copy of the affidavit either one or three days before the hearing on the motion. It is undisputed, however, that RR & T did not file the affidavit until the day before the hearing. In response, Sun Valley filed a motion to strike the affidavit as untimely under I.R.C.P. 56(c).

In its written decision, the district judge denied Sun Valley's motion to strike the Jensen affidavit reasoning that Sun Valley failed to demonstrate unfair prejudice resulting from the late service. Agreeing with RR & T, the district judge granted the motion for partial summary judgment finding that each of the alleged deficiencies involved tactical decisions protected by the attorney judgment rule, also referred to as the "judgmental immunity doctrine." The trial court dismissed Sun Valley's claim for legal malpractice and issued a Rule 54(b) certificate. Sun Valley appeals.

## II.

### DISCUSSION

[1–4] Our review of a trial court's ruling on a motion for summary judgment is the same as that required of the trial court when ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 887 P.2d 29

(1994). Pursuant to I.R.C.P. 56(c), summary judgment must be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). As when the motion is initially considered by the trial court, this Court on review, liberally construes the record in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 869 P.2d 1365 (1994). If we determine reasonable people could reach different conclusions or draw conflicting inferences from the evidence, we will deny the motion. *Id.* at 272, 869 P.2d at 1367. However, if the evidence reveals no disputed issues of material fact, only a question of law remains, and this Court exercises free review. *Id.*

■ To establish a claim for legal malpractice, Sun Valley must prove (1) it had an attorney-client relationship with RR & T; (2) the existence of a duty on the part of RR & T; (3) that RR & T breached that duty; and (4) that RR & T's failure to perform the duty proximately caused Sun Valley's damages. *Lamb v. Manweiler,* 129 Idaho 269, 272, 923 P.2d 976, 979 (1996). Only if, after liberal construction of the record in Sun Valley's favor, this Court finds that there are no genuine issues of material fact as to any element above is summary judgment proper.

■ It is undisputed that Sun Valley and RR & T had an attorney-client relationship. As a matter of law, an attorney owes his client a duty to use and exercise reasonable care, skill, discretion, and judgment in the representation. *See, e.g.,* IDAHO RULES OF PROFESSIONAL CONDUCT Rules 1.1—1.3. It is also not disputed that a jury returned a verdict against Sun Valley awarding Mainline more than $500,000 in damages. The only issues remaining are whether RR & T breached its duty, and, if so, whether that breach proximately caused Sun Valley's damages; that is, did it affect Mainline's award in the underlying litigation. Sun Valley's allegations of legal malpractice can be separated into two categories: (1) RR & T's failure to object to improper testimony and an improper exhibit concerning Mainline's damage calculations and (2) RR & T's failure to challenge the basis for those calculations. The district judge determined, based upon Jensen's affidavit, that all of the allegations relating to RR & T's breach of duty were covered by the judgmental immunity rule and, therefore, RR & T was shielded from liability for these tactical decisions. As the district judge noted, whether judgmental immunity is recognized in a legal malpractice action in Idaho is a matter of first impression and, therefore, in analyzing the grant of summary judgment in this case, we must first determine the parameters and applicability of such a rule.

## A. Judgmental Immunity

■ The "rule" as applied in other jurisdictions has been articulated in different ways.[1] Most commonly it appears that the courts have simply ruled that in certain circumstances an attorney is not liable "as a matter of law" and thus, the issue need not be submitted to a jury for decision. All courts acknowledge the standard of care with which all attorneys must comply and that is: they are held to that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer. The courts have then held as a matter of law that an attorney cannot be held liable for failing to correctly anticipate the ultimate resolution of an unset-

1. At least thirteen jurisdictions addressing the issue have adopted the rule in some form. *See Crosby v. Jones,* 705 So.2d 1356 (Fla.1998); *Simko v. Blake,* 448 Mich. 648, 532 N.W.2d 842, 847 (1995); *Hudson v. Windholz,* 202 Ga.App. 882, 416 S.E.2d 120 (1992); *Halvorsen v. Ferguson,* 46 Wash.App. 708, 735 P.2d 675, 681 (1986); *Martinson Mfg. Co. v. Seery,* 351 N.W.2d 772 (Iowa 1984); *Woodruff v. Tomlin,* 616 F.2d 924, 930 (6th Cir.1980) (applying Tennessee law); *Herston v. Whitesell,* 348 So.2d 1054 (Ala.1977); *Muse v. St. Paul Fire & Marine Ins. Co.,* 328 So.2d 698 (La.Ct.App.1976); *Smith v. Lewis,* 13 Cal.3d 349, 118 Cal.Rptr. 621, 530 P.2d 589 (Cal.1975); *Harmon v. Szrama,* 102 Ariz. 343, 429 P.2d 662 (1967); *Collins v. Wanner,* 382 P.2d 105 (Okla.1963); *Meagher v. Kavli,* 256 Minn. 54, 97 N.W.2d 370 (1959); *Hodges v. Carter,* 239 N.C. 517, 80 S.E.2d 144 (1954).

tled legal principal. *See, e.g., Halvorsen v. Ferguson,* 46 Wash.App. 708, 735 P.2d 675, 681 (1986). Other courts have stated that, in the context of litigation, an attorney will not be held liable for a mere error in judgment or trial tactics if the attorney acted in good faith and upon an informed judgment. *See, e.g., Simko v. Blake,* 448 Mich. 648, 532 N.W.2d 842, 847 (1995). The "non-liability" rule in both situations, however, is conditioned upon the attorney acting in good faith and upon an informed judgment after undertaking reasonable research of the relevant legal principals and facts of the given case. *See, e.g., Smith v. Lewis,* 13 Cal.3d 349, 118 Cal.Rptr. 621, 530 P.2d 589, 595 (1975). In other words, an attorney must act with that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer.

 Certain jurisdictions have then characterized this determination that an attorney cannot be held liable as "judgmental immunity." Rather than being a rule which grants some type of "immunity" to attorneys, it appears to be nothing more than a recognition that if an attorney's actions could under no circumstances be held to be negligent, then a court may rule as a matter of law that there is no liability. As in any other negligence case, however, if there is a genuine issue of material fact about the reasonableness and care exercised by the attorney, then the issue must be submitted to the jury for determination. An attorney is still "bound to exercise a reasonable degree of skill and care in all his professional undertakings." *Woodruff v. Tomlin,* 616 F.2d 924, 930 (6th Cir. 1980) (applying Tennessee law). Consequently, an attorney must exercise due care and diligence when pursuing or preparing for a case. The attorney must also display a reasonable degree of skill and knowledge when trying a case. *See Herston v. Whitesell,* 348 So.2d 1054, 1057 (Ala.1977). For example, an attorney who fails to exercise reasonable skill and diligence when investigating the merits of his opponent's position on an issue is not immune from liability. *See Woodruff,* 616 F.2d at 933–34 (finding allegations of an attorney's failure to contact or interview a potentially valuable witness to present a question for a jury). An attorney who is unfamiliar with or disregards controlling points of law when presenting his client's case is also not immune from liability. *Id.* at 934–35 (finding allegations of an attorney's failure to bring to the attention of the trial court statutes controlling liability to present a question for the jury).

Assuming that there may be instances where a court may find no breach of duty as a matter of law, we must determine whether this case presents such a circumstance.

## B. The Jensen Affidavit

Before analyzing whether the depositions and affidavits on file in this case present any issues of material fact, we must first address the correctness of the district judge's decision to consider the Jensen affidavit. As mentioned previously, RR & T served Sun Valley with a copy of this affidavit no more than three days before the hearing on the motion and did not actually file the affidavit until the day before the hearing. Nonetheless, the district judge denied Sun Valley's motion to strike the affidavit ruling that I.R.C.P. 56(e) allows a court to permit a party to supplement or oppose an affidavit by further affidavit and that Sun Valley failed to show any resulting prejudice.

 Rule 56(c) requires the moving party to serve the motion along with supporting brief and affidavits not less than twenty-eight days before the hearing. I.R.C.P. 56(c). The purpose is to give the opposing party an adequate and fair opportunity to support its case. The rule requires the adverse party, if it chooses, to respond with an opposing brief and affidavits no less than fourteen days prior to the hearing. *Id.* Again, the purpose is to give the moving party an adequate opportunity to respond. Finally, if the moving party chooses to reply, the rule permits the service of a reply brief no fewer than seven days before the hearing. *Id.* While the above language is mandatory, the trial court may shorten the time periods for good cause shown. *Id.*

 Here, RR & T filed its motion for partial summary judgment on September 17, 1997, attaching to its motion Blase's deposi-

**6**

tion testimony. For the most part, that testimony is wholly irrelevant to Sun Valley's specific assertions of malpractice. RR & T's motion was set for hearing for October 23, 1997. On October 10, 1997, Sun Valley filed Blase's affidavit, which stated that he had informed RR & T during the underlying trial that the Blincoe cellar could not hold 160,000 cwt. of potatoes as asserted by Mainline. On the same day, Sun Valley also filed verified copies of its answers to RR & T's interrogatories, exhibits and portions of the transcript from the underlying trial, deposition testimony, and evidence relating to the freezing conditions and possible overvaluation of the potatoes.

RR & T responded on October 20, 1997, submitting verified portions of the transcript from the underlying litigation showing that RR & T had indeed challenged the basis of Mainline's asserted damages. However, this challenge did not attack the capacity of the Blincoe cellar nor the quality of the potatoes. Then, on October 22, leaving Sun Valley without an opportunity to respond, RR & T filed the Jensen affidavit, for the first time contradicting Sun Valley's allegations of malpractice.[2]

█ Rule 56(e) does give the trial court discretion to allow a party to oppose or supplement an affidavit by further affidavits, however, the time limitations set forth in Rule 56(c) still apply unless the court shortens the time for good cause shown. The problem here is that the Jensen affidavit was not a supplement to the earlier factual showing made in support of its motion, but rather presented new and different factual information relating to the judgmental immunity rule. Moreover, while the Jensen affidavit was also filed to oppose information submitted by Sun Valley, the information contained

in Jensen's affidavit was clearly known and available to RR & T prior to filing its motion and the record reflects no reason why the affidavit could not have been timely filed.

With the Jensen affidavit in hand, the district judge granted RR & T's motion for partial summary judgment noting that Sun Valley failed to contradict assertions made in the affidavit. Those assertions related to Jensen's personal thought processes as he decided whether to challenge or present certain evidence in the underlying trial. Because RR & T did not serve the affidavit until shortly before the hearing, Sun Valley did not have an opportunity to depose Jensen or otherwise contradict his statements and was, therefore, prejudiced.

Because there was no showing of good cause for failing to comply with the time limits by RR & T, and clearly Sun Valley was at a disadvantage in responding to the summary judgment motion, the district judge abused his discretion in considering Jensen's affidavit. Therefore, we will not consider Jensen's statements in our review of RR & T's motion for partial summary judgment.

## C. Summary judgment ruling

█ The motion for partial summary judgment filed by RR & T related only to the count alleging legal malpractice and was premised on their contention that "the allegedly negligent acts or omissions are all tactical or strategic decisions protected by the Attorney Judgment Rule." Without the Jensen affidavit, the only support for the motion is found in excerpts from Blase's deposition. Those excerpts simply support the fact that Blase had previously been involved in law suits and that testimony had been given indicating that some of the potatoes in the Blin-

---

2. In his affidavit, Jensen states that he made a calculated decision not to challenge the capacity of the Blincoe cellar. Blase did not express any concerns on the size of the cellar until mid-way through the trial. Blase had already testified and had not mentioned the issue. Moreover, Jensen had no documentation as to the cellar's capacity at the time. Mainline asserted damages based upon 160,000 cwt. of potatoes and had documentary evidence showing that 150,000 cwt. had been taken out of the cellar. With nothing but Blase's educated guess as to the cellar's

capacity, Jensen chose not to elicit testimony from Blase on this topic and potentially damage Blase's credibility.

Jensen also stated that he interviewed Dennis Herbold concerning the possibility that a portion of the potatoes were freeze damaged, thus, inflating Mainline's damage calculations. Dennis Herbold could not testify that the particular potatoes were damaged. Moreover, Sun Valley had not listed freeze damage as a reason for rejecting the potatoes. Consequently, Jensen stated that he chose not to raise the issue at trial.

coe cellar "had substantial rot in them;" there is nothing contained therein which supports RR & T's contention that there are no genuine issues of material fact about their exercise of the care, skill and knowledge required of a reasonable, careful and prudent lawyer in regard to Sun Valley's allegations. In opposition, Sun Valley presented through affidavit, interrogatory answers, exhibits and depositions evidence which calls into question the exercise of that degree of skill and care necessary. On the state of the record as it existed before the district judge, excluding the Jensen affidavit, we hold that there was no basis for granting RR & T's motion for summary judgment, and the district judge erred in doing so.

## III.

### CONCLUSION

Based upon the analysis above, we vacate the decision of the district judge and remand the case for further proceedings consistent with this opinion. We award costs on appeal to Sun Valley pursuant to I.A.R. 40.

Justices SILAK, SCHROEDER, WALTERS and Justice Pro Tem McLAUGHLIN, concur.