IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 33305

| MIGUEL ARREGUIN, | ) | Idaho Falls, October 2007 |
| | ) | |
| Plaintiff-Appellant, | ) | 2008 Opinion No. 46 |
| | ) | |
| v. | ) | Filed: March 31, 2008 |
| | ) | |
| FARMERS INSURANCE COMPANY OF IDAHO, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | SUBSTITUTE OPINION. |
| Defendant-Respondent. | ) | THE PRIOR OPINION ISSUED |
| | ) | JANUARY 31, 2008 IS HEREBY WITHDRAWN. |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. James C. Herndon, District Judge.

District court order granting summary judgment, <u>reversed</u> and <u>remanded.</u>

Baker & Harris, Blackfoot, for appellant. Jonathan William Harris argued.

Elam & Burke, Boise, for respondent. Jeffrey A. Thomson argued.

---

BURDICK, Justice

This case arises from an unpaid claim on a homeowners insurance policy. We must decide whether an exclusionary provision in the homeowners insurance policy is ambiguous.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Miguel Arreguin obtained a homeowners insurance policy from Respondent Farmers Insurance Company of Idaho (Farmers). Subsequent to the issuance of the policy, an agent of Farmers inspected the property and decided a detached garage on the property, which would normally be covered under the "Separate Structure" provision, should be excluded from coverage. As a result of that affirmative action, Farmers added an "Outbuilding" exclusionary provision to the policy and sent it to Arreguin. "Outbuilding" was not defined anywhere in the policy.

1

Arreguin made a claim on his policy after the detached garage sustained damage from a fire. Farmers denied Arreguin's fire damage claim based on its conclusion that the detached garage was an "outbuilding" and, therefore, excluded from coverage under the policy.

Prior to the claim for fire damage, Arreguin made a claim for wind damage to the same detached garage. Though Farmers first denied the claim as to the structural damage based on the "Outbuildings" exclusionary provision, it ultimately covered the damage.

Arreguin sued Farmers for breach of contract and insurance bad faith for failure to pay for the structural damage to the garage caused by the fire. The district court granted Farmers's motion for summary judgment. Arreguin timely appealed to this Court.

## II. STANDARD OF REVIEW

When reviewing a district court's grant of summary judgment, this Court uses the same standard a district court uses when it rules on a summary judgment motion. *Jordan v. Beeks*, 135 Idaho 586, 589, 21 P.3d 908, 911 (2001). Summary judgment shall be rendered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court will liberally construe the record in favor of the party opposing the motion for summary judgment and will draw all reasonable inferences and conclusions in favor of that party. *Farmers Ins. Co. of Idaho v. Talbot*, 133 Idaho 428, 431, 987 P.2d 1043, 1046 (1999).

"When interpreting insurance policies, this Court applies the general rules of contract law subject to certain special canons of construction." *Clark v. Prudential Prop. & Cas. Ins. Co.*, 138 Idaho 538, 540, 66 P.3d 242, 244 (2003). "The general rule is that, because insurance contracts are adhesion contracts, typically not subject to negotiation between the parties, any ambiguity that exists in the contract 'must be construed most strongly against the insurer.'" *Talbot*, 133 Idaho at 432, 987 P.2d at 1047 (quoting *Mut. of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235, 912 P.2d 119, 122 (1996)). Whether an insurance policy is ambiguous is a question of law over which we exercise free review. *Id*.

## III. ANALYSIS

Arreguin argues the "Outbuildings" exclusion in his homeowners insurance policy is ambiguous and, therefore, cannot be a basis for denial of coverage for the damage to the detached garage. Farmers argues the "Outbuildings" exclusion is unambiguous and that in any

2

case Arreguin had notice the detached garage was an "outbuilding." Finally, both parties assert they are entitled to an award of attorney fees on appeal. Each issue is addressed in turn.

**A. The "Outbuildings" exclusionary provision is ambiguous.**

Both parties agree that the detached garage is a "separate structure" within the meaning of the contract. However, Farmers denied coverage for the fire damage to the garage because it read the "Outbuildings" exclusionary provision to include the detached garage. Arreguin argues the "Outbuildings" exclusion is ambiguous and thus cannot be used to deny him coverage for the fire damage.

When we determine whether a policy is ambiguous we ask "whether the policy 'is reasonably subject to conflicting interpretation.'" *Talbot*, 133 Idaho at 432, 987 P.2d at 1047 (quoting *Mut. of Enumclaw v. Box*, 127 Idaho 851, 853, 908 P.2d 153, 155 (1995) (quoting *City of Boise v. Planet Ins. Co.*, 126 Idaho 51, 55, 878 P.2d 750, 754 (1994))). A provision that seeks to exclude the insurer's coverage must be strictly construed in favor of the insured. *Moss v. Mid-America Fire & Marine Ins. Co.*, 103 Idaho 298, 300, 647 P.2d 754, 756 (1982). The "burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage." *Id.*

The insurance contract provides:

**Coverage B – Separate Structures**

We cover other structures on the **residence premises** separated from the dwelling, or connected to the dwelling by only a fence, utility line, sidewalk, driveway, patio or similar connection.

Wall-to-wall carpeting attached to the structure is part of the structure.

We do not cover land or the value of land, including land on which the separate structure is located or the cost to restore, replace, repair or rebuild land. If a covered loss causes damage to a separate structure and to the land on the **residence premises,** we do not cover any increased cost to repair or rebuild the separate structure because of damage to the land.

We do not cover separate structures which are intended for use in **business** or which are actually used in whole or in part for **business** purposes.

* * *

**RESTRICTIVE ENDORSEMENT**

We agree not to cancel this policy for 30 days from the date shown above. You and we agree that this policy does not cover loss by / to:

3

1. ALL OUTBUILDINGS.

. . .

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

(Emphasis in original).

An insurance policy is ambiguous when it is reasonably subject to differing interpretations. *Armstrong v. Farmers Ins. Co. of Idaho*, 143 Idaho 135, 137, 139 P.3d 737, 739 (2006). "Outbuildings" is not defined anywhere in the contract. Here "outbuildings" is reasonably subject to at least two differing interpretations and thus is ambiguous.[1] Its definition may reasonably encompass all structures on the property, including all the described structures under "separate structures" as well as attached structures to the dwelling.[2] Another reasonable definition might encompass only those structures within the definition of "separate structures."

Farmers cites various "outbuilding" definitions in an attempt to show that all definitions of "outbuildings" include a detached garage. These various definitions demonstrate that "outbuildings" is not necessarily subject to a single reasonable definition. For instance, one source defines "outbuilding" to include buildings both adjoining to and separate from the dwelling, and a different source defines "outbuilding" only as a detached building. Furthermore, during oral argument, Farmers was unable to say whether the pump house on Arreguin's property would qualify as an "outbuilding." An additional indication of ambiguity in this particular contract is that it defines many terms such as: aircraft, occurrence, residence premises, and water, but does not define "outbuilding" anywhere in the contract. *See Moss*, 103 Idaho at 301, 647 P.2d at 757 (noting that an indication of vagueness and ambiguity of the undefined terms in question was that more than forty terms were defined in the policy and thus address questions the insured might have about coverage).

Furthermore, a provision excluding coverage is strictly construed in favor of the insured and the insurer has the burden to use clear and precise language if it is restricting the scope of its

---

[1] Farmers argues that because the plain and common meaning of "outbuildings" would include a detached garage there is no need to consider whether the provision would be ambiguous as to other structures. However, first the Court determines whether there is an ambiguity. *Clark*, 138 Idaho at 541, 66 P.3d at 245. Only when the policy language is clear and unambiguous does the Court determine coverage according to the plain meaning of the words used. *Id.*

[2] Attached structures to the dwelling are covered under a separate provision in the policy dealing with coverage to the dwelling itself.

4

coverage. *Moss*, 103 Idaho at 300, 647 P.2d at 756. "[E]xclusions not stated with specificity will not be presumed or inferred." *Clark*, 138 Idaho at 541, 66 P.3d at 245. If Farmers intended the "Outbuildings" provision to exclude coverage for the detached garage it could have simply used the word "garage" or similar clear and precise language to that used when it defined the "separate structures" covered under the contract.

Additionally, the fact that the policy's other exclusions use clear and precise language and indicate to which part of the policy coverage they correspond, further bolsters our conclusion that the "Outbuildings" exclusion is ambiguous. For example, the "Sewer and Drain Water Damage Coverage Endorsement" specifically articulates that it applies to the coverage extended under: Coverage A – Dwelling, Coverage B – Separate Structures, and Coverage C – Personal Property. Contrarily, the "Outbuildings provision" lacks a reference to any portion of the existing contract and instead it is left to the imagination of the insured as to what the exclusion applies to with only the aid of the additional unspecific language that the exclusion "supersedes and controls anything to the contrary."

We are compelled to strictly construe the exclusionary provision in favor of the insured and the insurance company bears the burden to use clear and precise language when restricting the scope of coverage. *Moss*, 103 Idaho at 300, 647 P.2d at 756. It is unclear whether "outbuildings" covers the buildings defined in separate structures or the attached structures defined under dwelling. Unlike the other clear and detailed exclusionary provisions, the "Outbuildings" provision fails to reference any other part of the contract. Therefore, because Farmers has not met its burden to use clear and precise language in this particular exclusionary provision, we hold the "Outbuildings" exclusionary provision is ambiguous and reverse the district court's grant of summary judgment to Farmers.

## B. We decline to consider Farmers's notice argument.

Farmers argues that prior to the fire damage, Arreguin knew the "Outbuildings" exclusionary provision encompassed the detached garage. Arreguin asserts that he did not have notice and that in any case, notice is irrelevant.

In the order granting summary judgment to Farmers, the district court stated:

This Court further finds Arreguin had adequate notice of the lack of insurance coverage for his detached garage because Farmers had previously denied a claim by Arreguin for damages to the detached garage, citing the same clause in the restrictive endorsement.

5

Although unclear, the district court's factual finding is either addressing an issue raised in Arreguin's complaint which is not on appeal or Farmers's argument that "outbuildings" should include the detached garage because Arreguin had actual notice the detached garage was excluded from coverage.

First, Arreguin argues the district court's finding is irrelevant because it pertains to a separate allegation in his complaint—not an issue on appeal—that the "Outbuildings" exclusion was added to his insurance policy without notice. We agree that if the finding does address this issue of whether Arreguin had notice Farmers considered the detached garage to fall under the "Outbuildings" provision, it is irrelevant for purposes of this appeal.

Second, the district court's finding may be a factual finding that Arreguin had notice the "Outbuildings" exclusion included the detached garage. Prior to the fire damage to the detached garage, Arreguin made a claim against his insurance policy for wind damage to the detached garage. Though Farmers covered damage to personal property in the garage, it denied coverage for structural damage to the garage based on the "Outbuildings" exclusionary provision. However, according to the record before us, Farmers ultimately decided to cover structural damage to the garage and issued funds to Arreguin accordingly.

In any case, this would be an inappropriate factual finding that we will not consider. When a contract is ambiguous, the interpretation of the contract terms presents a question of fact. *Moss*, 103 Idaho at 302, 647 P.2d at 758. Hence, the degree to which Arreguin's previous notice that Farmers considered the detached garage excluded from coverage should inform the interpretation of the term "outbuildings" is a question of fact and not a matter to be resolved on summary judgment. *See* I.R.C.P. 56(c). Therefore, we decline to consider whether Arreguin had notice of Farmers's interpretation of "outbuildings" and whether such notice leads to a contract interpretation that "outbuildings" includes Arreguin's detached garage.

## C. Attorney Fees.

Arreguin argues that he is entitled to an award of attorney fees on appeal pursuant to I.C. § 41-1839. An insurer must pay reasonable attorney fees when it issues a contract of insurance and "fail[s] for a period of thirty (30) days after proof of loss has been furnished as provided in such policy . . . to pay to the person entitled thereto the amount justly due under such policy. . . ." I.C. § 41-1839(1). To be entitled to an award of attorney fees under this provision, the insured must prevail. *Slaathaug v. Allstate Ins. Co.*, 132 Idaho 705, 711, 979 P.2d 107, 113

6

(1999). Since we are remanding the case, whether Arreguin is ultimately the prevailing party and thus, entitled to attorney fees has yet to be determined. If Arreguin is entitled to attorney fees below, he will also be entitled to attorney fees for this appeal.

Farmers requests an award of attorney fees on appeal pursuant to I.C. § 41-1839(4) which allows an award of attorney fees when a case is "brought, pursued or defended frivolously, unreasonably or without foundation." Arreguin has prevailed on this appeal, consequently he has not pursued this appeal unreasonably. Therefore, we decline to award Farmers attorney fees.

## IV. CONCLUSION

We reverse the district court's grant of summary judgment to Farmers and remand the case to the district court. Costs awarded to Appellant.

Justices J. JONES, and TINGEY, pro tem. **CONCUR.**

Chief Justice EISMANN, dissenting.

The sole issue in this case is whether Arreguin's detached garage is an outbuilding as that term is normally used. Under every single definition of "outbuilding" presented in connection with this case, Arreguin's detached garage is an outbuilding. There is absolutely no dispute about that. The majority cannot point to a single definition of "outbuilding" that would exclude Arreguin's garage.

### A. It is undisputed that Arreguin's garage is an outbuilding.

The stock language in the insurance policy provided coverage for separate structures. The applicable provision stated:

> **Coverage B – Separate Structures**
> We cover other structures on the **residence premises** separated from the dwelling, or connected to the dwelling by only a fence, utility line, sidewalk, patio or similar connection.

The policy defined "residence premises" to mean "the one or two family dwelling and separate structures or that part of any other building where you reside, and which is shown in the Declarations." The declarations described the residence premises as being "11 E 100 N, Blackfoot ID 83221."

Attached to the policy was a restrictive endorsement stating that the policy did not cover loss to "ALL OUTBUILDINGS." The endorsement also stated that it was part of the policy and that "[i]t supersedes and controls anything to the contrary." Thus, the issue is whether Arreguin's unattached garage would constitute an outbuilding. It clearly would. Every single

7

definition of the word "outbuilding" would include that garage. In fact, both Arreguin and the majority have been unable to find a single definition of "outbuilding" that would not include Arreguin's detached garage.

"Generally speaking, . . . an outbuilding is something which is to be used in connection with a main building, or which is subservient to it, although distinct from it." 20 Am.Jur.2d Covenants, Etc., § 178 (2005). *Black's Law Dictionary* 1128 (Bryan A. Garner ed., 7th ed., West 1999), defines the word "outbuilding" as "[a] detached building (such as a shed or garage) within the grounds of a main building." *Webster's Third New International Dictionary of the English Language* 1601 (Philip Babcock Gove et al. eds., G. & C. Merriam Co. 1971), defines the word "outbuilding" as "a building (as a stable or smokehouse) separate from but accessory to a main house." *Webster's New Word Dictionary of the American Language* 1009 (David B. Guralnik ed. in chief, 2d ed., The New World Publishing Co. 1970), defines the word "outbuilding" as "a structure, as a garage or barn, separate from the house or main building." All of these definitions of "outbuilding" would include the detached garage at issue in this case.

In *State v. Marks*, 45 Idaho 92, 260 P. 697 (1927), we addressed the definition of the word "outbuilding" when considering the definition of the word "outhouse" in a burglary statute. The words "outbuilding" and "outhouse" were synonymous, and so in defining outhouse we also discussed the definition of outbuilding.[3] In *State v. Marks*, at 45 Idaho 96-97, 260 P. 698-99, we stated as follows:

> The words "outhouse" and "outbuilding" are defined as follows:
>> Bouvier: "Buildings adjoining or belonging to dwelling houses; buildings subservient to yet distinct from the principal mansion house, located either within or without the curtilage."
>> The Standard Dictionary: "A smaller building standing apart from but appertaining to a main or larger building or dwelling."
>> Webster's New International Dictionary: "Outhouse: A small house or building at a little distance from the main house; an outbuilding.
>> "Outbuilding: A building separate from and subordinate to the main building; an outhouse."
>> The Century Dictionary: "A small house or building separate from the main building. * * *"
>> While it might be said that the foregoing definitions are susceptible of the construction that an outhouse must be separate and apart from the main building,

---

[3] In the context of the burglary statute, the word "outhouse" was not limited to an outdoor privy.

8

the Supreme Court of Illinois, in *Hultin v. Klein*, 301 Ill. 94, 133 N. E. 660, 20 A. L. R. 230 [1921], in passing on this question, held that:

> "From the definitions which have been given, it will be seen that an outbuilding is usually separate from the main building, but this does not necessarily imply removal to such a distance as to not be adjacent or abutting and in tangible connection. An outbuilding may be built a few feet or a few inches, only, from the main house. It may be connected with the house by a covered passage. If for convenience the covered passage is eliminated, and the outbuilding moved or originally constructed immediately against the main building, it would not therefore cease to be an outbuilding. If the outbuilding is separated from the main house only by the space of a common wall, this does not necessarily change its character as an outbuilding. It is the character of the building and the use which is made of it which determine whether or not it is an outbuilding."

In *State v. Marks*, we stated that the word "outhouse," which was synonymous with the word "outbuilding," was not ambiguous and need not be defined.[4] Every single definition of "outbuilding" cited in *State v. Marks* would include the detached garage at issue in this case. In *State v. Marks*, we simply held that a small structure with a door, walls, and ceiling that was attached to the main building, but from which there was no access into the main building, could constitute an outhouse or outbuilding. While there may be some circumstances in which there is a question as to whether an attached structure is an outbuilding or part of the main building, that is not an issue in this case.

**B. The majority mischaracterizes the definitions of "outbuilding."**

The majority states, "The various definitions submitted by Farmers demonstrate that 'outbuildings' is not necessarily subject to a single reasonable definition. For instance, one source defines 'outbuilding' to include buildings both adjoining to and separate from the dwelling and a different source defines 'outbuilding' only as a detached building." This statement mischaracterizes the definitions.

Some definitions define it as a detached structure. *E.g.*, *Black's Law Dictionary* 1128 (Bryan A. Garner ed., 7th ed., West 1999), defines the word "outbuilding" as "[a] detached building (such as a shed or garage) within the grounds of a main building." Other authorities state that an outbuilding can be attached to the main building and still be an outbuilding. *E.g.,*

---

[4] "The meaning of the words 'house' and 'outhouse,' as used in the statute, is generally understood, and, 'when ordinary words and terms are used in the sense in which they are generally understood, it is not necessary to define or explain them.'" 45 Idaho at 98, 260 P. at 699 (quoting from Branson's Instructions to Juries (2d Ed.) § 49, p. 77).

*State v. Marks*, 45 Idaho 92, 260 P. 697 (1927) (a small, dirt-floored structure that was about three feet deep and four feet wide, that had a sloping roof five feet high in the back and four feet high in the front, and that had no opening into the main building was an outbuilding even though it was attached to the main building). **There is no definition stating that an outbuilding must be attached to the main building.** Because the garage in this case is unattached, the difference in the definitions does not create any ambiguity here. The unattached garage is an outbuilding under every one of the definitions.

**C. The majority opinion conflicts with prior law and produces an incongruous result.**

The majority opinion has not pointed to a single definition of "outbuilding" that would exclude the detached garage in this case. It simply holds that because there may be ambiguity as to whether certain other structures would constitute an outbuilding, the word is ambiguous and this case must be remanded. Had the garage been attached to Arreguin's house, then it would not be an outbuilding under some definitions. The simple fact is that it was not attached to the house and is an outbuilding under every definition. The majority does not explain how this creates any ambiguity in this case. Where the garage at issue in this case is an outbuilding under every single definition of the term, it is incongruous to hold the term ambiguous simply because reasonable minds could differ as to whether some other structure meets that definition. The issue in this case is whether Arreguin's detached garage is an outbuilding, not whether someone else's different structure would be an outbuilding. This case should be resolved based upon its facts, not upon hypothetical facts different from those here. The district court is being reversed not because there is any question as to whether Arreguin's detached garage constitutes an outbuilding, but because it could possibly be unclear as to whether someone else's structure does. One would think that when considering the meaning of the word "outbuilding" our prior explanation of that word in *State v. Marks* would be instructive, unless of course following it would produce the wrong result.

The majority's holding also conflicts with our prior opinion in *Allstate Insurance Co. v. Mocaby*, 133 Idaho 593, 990 P.2d 1204 (1999). In *Mocaby*, the issue was whether a granddaughter was a "resident" of her grandparents' household and therefore an insured under their homeowner's insurance policy. The insurer admitted that the word "resident" was ambiguous, but argued that under the circumstances of the case there was no ambiguity that the

granddaughter was not a resident of her grandparents' household. We agreed and affirmed the grant of summary judgment.

**D. The failure of the endorsement to specifically refer to Section I of the policy does not render it ambiguous.**

The majority also states that the endorsement is ambiguous because it does not expressly identify the part of the policy to which it applies. According to the majority, "Additionally, the fact that the policy's other exclusions use clear and precise language and indicate to which part of the policy coverage they correspond, further bolsters our conclusion that the 'Outbuildings' exclusion is ambiguous." This statement is illogical.

The endorsement begins, "You and we agree that this policy does not cover loss by / to: 1. ALL OUTBUILDINGS." The endorsement obviously modifies what would otherwise be a covered loss. Arreguin had no difficulty understanding to what part of the policy the endorsement applied. In fact, he did not argue on appeal that he did not know to what part of the policy the exclusion applied. That is simply an argument created by the majority in an attempt to justify the result.

More importantly, however, if the endorsement said, "This endorsement applies to Section I, Coverage B – Separate Structures," how would that clarify the meaning of the word "outbuilding"? It is not used in that part of the policy, nor is there any mention of a garage, detached or otherwise.

**E. Conclusion.**

In this case, there is absolutely no ambiguity that the detached garage constitutes an outbuilding. It is uncontroverted that Arreguin's detached garage constitutes an outbuilding under every definition of that word. Ambiguity as to whether Arreguin's garage is an outbuilding cannot be created simply because it may be unclear whether or not some other hypothetical structures are outbuildings. Therefore, the judgment of the district court should be affirmed.

Justice W. JONES, CONCURS.